UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM M. MURRAY,

    Petitioner,

v.                                          CASE NO. 8:16-cv-25-T-02TGW

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.
_____/

## ORDER

William M. Murray, a Florida prisoner, initiated this action for habeas corpus relief pursuant to 28 U.S.C. Section 2254. (Dkt. 1). Upon consideration of the petition and memorandum, the Court ordered Respondent Secretary, Department of Corrections, to show cause why relief sought in the petition should not be granted. (Dkt. 8). Thereafter, Respondent filed a response in opposition to the petition, along with the state court record. (Dkts. 13, 15). Although permitted to do so, Mr. Murray did not file a reply. (Dkt. 8 at 4).

In his petition, Mr. Murray alleges eight (8) claims for relief. The Court will address related claims together.

I.    PROCEDURAL HISTORY

Following a jury trial in February 2008, Mr. Murray was found guilty of robbery with a firearm and sentenced to life in prison as a prison releasee reoffender ("PRR"). (Dkt. 15 Ex. 1 at 56; Ex. 2 at 303, 306).

Mr. Murray appealed, and his attorney filed an *Anders*[1] brief. (Dkt. 15 Ex. 3). Mr. Murray

---

[1] In *Anders v. California*, 386 U.S. 738, 744 (1967), the Supreme Court set forth the following procedure for court-appointed counsel to pursue an appeal requested by his client when counsel has determined there is no merit to the

did not file a *pro se* brief. Florida's Second District Court of Appeal affirmed Mr. Murray's conviction and sentence without a written opinion. (Dkt. 15 Ex. 5); *Murray v. State*, 25 So. 3d 1238 (Fla. 2d DCA 2010) (per curiam) (table).

Mr. Murray then moved for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure. (Dkt. 15 Ex. 7). The court held an evidentiary hearing on, and ultimately denied, each of his claims. (Dkt. 15 Exs. 9, 11). Mr. Murray appealed, and the state appellate court affirmed, per curiam, the denial of his Rule 3.850 motion. (Dkt. 15 Exs. 14, 17); *Murray v. State*, 177 So. 3d 617 (Fla. 2d DCA 2015) (table).

Mr. Murray then filed the instant federal habeas petition in this Court. Upon review, the Court can resolve the entire petition on the basis of the record. Therefore, an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent

---

appeal:

[I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court — not counsel — then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

### A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is

3

appropriate only if that application was "objectively unreasonable." *Id.*

Under section 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835–36; 28 U.S.C. § 2254(e)(1).

In evaluating a petitioner's claim, a federal habeas court must first identify the highest state court decision, if any, that adjudicated the claim on the merits. *Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). Where that state court's adjudication is not accompanied by a reasoned opinion, the United States Supreme Court has explained that:

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

### B. Ineffective Assistance of Counsel Standard

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel]

4

were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

The petitioner must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691–92. To show prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). *See also Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) (a petitioner must overcome the " 'doubly deferential' standard of *Strickland* and AEDPA.") (citation omitted). If a claim of ineffective assistance of counsel can be resolved through one of *Strickland*'s two prongs, the other prong need not be considered. *Strickland*, 466 U.S. at 697; *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

III.  ANALYSIS

    A. <u>Grounds One and Two</u>

In grounds one and two, Mr. Murray contends that his trial counsel erred by failing to object to the testimony of three witnesses who stated that Mr. Murray was in a surveillance video of the

5

robbery in question. (Dkt. 1 at 5, 7).[2] He also contends that his trial counsel should have requested a curative jury instruction regarding the testimony. (Dkt. 1 at 7).

Mr. Murray raised these claims as issues one and two in his Rule 3.850 motion for post-conviction relief. (Dkt. 15 Ex. 7 at 19–24). Following an evidentiary hearing, the state post-conviction court, affirmed by the state appellate court, denied relief. With regard to counsel's failure to object to the witness testimony, the court explained:

> Defendant alleges that counsel was ineffective for failing to object to the court's erroneous pre-trial ruling. He claims that the trial court made a pre-trial ruling on the admissibility of a surveillance tape, which showed the alleged robbery. The trial court determined that the tape could not be introduced at trial; however, it agreed to allow the witnesses who saw the tape to identify Defendant as being in the tape. Defendant argues that counsel should have objected to this ruling. . . .
>
> . . .
>
> At the evidentiary hearing, Defendant's prior defense counsel (hereinafter "counsel") testified he did not object to the Court's ruling allowing witnesses to identify Defendant as being on the surveillance tape because identification was not an issue in Defendant's case. (*See* Evid. Hrg. Transcr., p. 36–37, 39–41). Counsel testified his trial strategy and the defense argued at trial was that the incident that occurred between defendant and the victim was not a robbery. (*See* Evid. Hrg. Transcr., p. 36–37, 39–41). . . .

(Dkt. 15 Ex. 11 at 64–65). The court also explained:

> [A]t the evidentiary hearing, Defendant testified he told counsel prior to trial that he was at the scene and had an incident with the victim. . . . (*See* Evid. Hrg. Transcr., p. 24).
>
> The Court finds Defendant's testimony that he told his counsel he was at the scene supports counsel's testimony that identification was not an issue because Defendant never denied he was there. The Court finds counsel's testimony at the evidentiary hearing to be credible. The Court finds defense counsel's decision not to argue misidentification, to concede Defendant was at the scene of the alleged crime, and to argue as a defense that what happened was not a robbery, all of which counsel discussed with Defendant, are reasonable and strategic decisions that the Court will not second guess. See *Johnson*[ *v. State*], 769 So. 2d [990,] 1001

---

[2] The state trial court ruled the contents of the video inadmissible, as the tape was never made available to the defense. However, the court permitted the witnesses, who viewed the video, to testify that Mr. Murray was in it. (Dkt. 1 at 5, 7; Dkt. 15 Ex. 1 Vol. I at 81–90; Vol. II at 109–11).

6

[Fla. 2000)]. Therefore, the Court finds counsel did not act deficiently. (Dkt. 15 Ex. 11 at 68–69).

Regarding Mr. Murray's claim that counsel should have requested a curative instruction when the witnesses identified Mr. Murray as being in the surveillance video, the state post-conviction court reiterated counsel's testimony that identity was not an issue in the case, determined that counsel's strategy in that regard was reasonable, and found counsel was not deficient for failing to request a curative instruction. (Dkt. 15 Ex. 11 at 70–71).

The record supports the state court's decisions. During the evidentiary hearing, trial counsel testified that the case was not one of misidentification. He stated, "[m]y theory was what really happened and I think that's what I closed my case with . . . [t]hat this was not a robbery and we don't know what really happened. It was not an issue of misidentification based upon my interviews with my client." (Dkt. 15 Ex. 9 at 128). Counsel further testified that Mr. Murray admitted to him that he was at the scene and interacted with the victim, but that the interaction was merely a verbal altercation, not a robbery. (Dkt. 15 Ex. 9 at 128–29).

At trial during opening statements, co-counsel for the defense stated: "This is not a case about an armed robbery. This is a case where things are not always what they appear. This is a case where the facts will show it just doesn't add up. This case is going to come down to details." (Dkt. 15 Ex. 2 Vol. II at 120). Near the end of the opening statement, co-counsel repeated the idea that "this is not a case about an armed robbery. This is a case where things are not always what they seem. The facts are just not going to add up." (Dkt. 15 Ex. 2 Vol. II at 122). Then, at the very end, she urged:

> Ladies and gentlemen, this is a case where things just don't add up, things are not always what they appear. After you've considered and weighed all of the evidence in this case and paid close attention to all the details and how they vary from witness to witness, you're going to leave this courtroom with reasonable doubt, reasonable

doubt, because the state will not be able to prove that my client, Mr. William Murray, committed the offense of armed robbery.

(Dkt. 15 Ex. 2 Vol. II at 122).

During closing, trial counsel highlighted numerous inconsistencies and unanswered questions, and argued:

> Are there doubts in your mind? There's a missing piece in the puzzle that just doesn't make sense. This is not an armed robbery and they haven't proven to you otherwise. Just take a step back, look at everything and we're going to ask you to find our client, Mr. Murray, not guilty because he is.

(Dkt. 15 Ex. 2 Vol. II at 284). Then, at the evidentiary hearing held by the post-conviction court, Mr. Murray affirmed that, prior to trial, he told his trial counsel that he was at the scene and had an encounter with the victim. (Dkt. 15 Ex. 9 at 24).

Mr. Murray's testimony and counsels' arguments are consistent with trial counsel's recollection at the evidentiary hearing that identity was not an issue and the defense strategy was to show the encounter was not a robbery. The Court agrees with the state court that trial counsel's defense strategy was reasonable. *See Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983) (explaining that strategic decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it."). Because identification was not an issue, Mr. Murray cannot demonstrate prejudice from the witnesses' identification testimony; nor can he demonstrate that a curative instruction was necessary.

Accordingly, Mr. Murray has not shown that the state court's decisions regarding grounds one and two — that trial counsel did not act deficiently and that Mr. Murray was not prejudiced by the failure to object to the witnesses' testimonies or to request a curative instruction — were contrary to, or an unreasonable application of, federal law or based on an unreasonable

determination of the facts. Grounds one and two are denied.

B. <u>Ground Three</u>

In ground three, Mr. Murray contends that his counsel erred by calling Anthony Ventura as a defense witness. He claims counsel should have known that, by calling Mr. Ventura, the State would ask Mr. Ventura to identify Mr. Murray as being on the challenged surveillance video and that such testimony was prejudicial to the defense. (Dkt. 1 at 9). Had counsel fully investigated and interviewed Mr. Ventura, Mr. Murray argues, counsel would have known Mr. Ventura would identify Mr. Murray as being on the surveillance video and, therefore, would not have called him as a witness. (Dkt. 1 at 10).

Mr. Murray raised this as issue three in his Rule 3.850 motion. (Dkt. 15 Ex. 7 at 25–26). The state post-conviction court, affirmed per curiam by the state appellate court, denied relief:

> At the evidentiary hearing, counsel testified he called Ventura as a witness for purposes of impeaching Detective Navarro's testimony on the issue of preservation of evidence. (*See* Evid. Hrg. Transcr., p. 39). Specifically, counsel stated there was a dispute as to whether or not the surveillance tape could have been preserved and how long the Detective waited to secure the evidence. (*See* Evid. Hrg. Transcr., p. 39). When asked if the possibility that on cross examination the State could ask Ventura if he could identify Defendant as the person on the tape, "did that rein into your decision to call him[,]" counsel testified, "[i]t did not weigh into my decision because ID was not an issue." (*See* Evid. Hrg. Transcr., p. 39). Counsel testified [that] he discussed calling Ventura as a witness with Defendant, who made no objection to such. (*See* Evid. Hrg. Transcr., p. 40). Counsel further testified that he believed "it is a strategic decision" of a lawyer to call or not call a witness. (*See* Evid. Hrg. Transcr., p. 40).
>
> At the evidentiary hearing, Defendant testified his counsel told him he was going to call Ventura as a witness. (*See* Evid. Hrg. Transcr., p. 1[0]). Defendant further testified he did not tell his counsel he had a problem with calling Ventura, stating
>
>> MS. GONZALEZ: Did you have any problem with Mr. McKeever calling Mr. Ventura as a witness?
>>
>> DEFENDANT: Yes.

9

> MS. GONZALEZ: Did you tell Mr. McKeever that?
>
> DEFENDANT: At the time, no.

(*See* Evid. Hrg. Transcr., p. 10).

> The Court finds trial counsel's decision to call a witness to impeach another witness and trial strategy that identification was not an issue, which counsel discussed with Defendant who did not object, are reasonable and strategic decisions that the Court will not second guess. *See Johnson*, 769 So. 2d at 1001. Therefore, the Court finds counsel did not act deficiently.

(Dkt. 15 Ex. 11 at 72–73). The record supports the state court's decision. (*See* Dkt. 15 Ex. 9 at 102, 131–32).

"Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one [a reviewing court] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). As explained, the state court reasonably determined that identity was not an issue in the case. Moreover, Mr. Murray testified that he did not voice any objection to his counsel when counsel discussed calling Mr. Ventura as a witness. (Dkt. 15 Ex. 9 at 102). Given these circumstances, trial counsel's decision to call Mr. Ventura as a defense witness to impeach part of Detective Navarro's testimony was within the wide range of reasonable professional competence. *See White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) ("The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.").

Accordingly, the state court's decision was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. Ground three is denied.

C. Ground Four

In ground four, Mr. Murray argues that his counsel erred by failing to impeach the ability

of Detective Navarro and Mr. Ventura to identify him on the video surveillance tape. (Dkt. 1 at 11). He claims impeaching the witnesses' ability to identify him in the video would have weakened the case against him and created a reasonable possibility of acquittal. (Dkt. 1 at 11-12).

Mr. Murray raised this claim as issue four in his Rule 3.850 motion for post-conviction relief. (Dkt. 15 Ex. 7 at 27–29). The state post-conviction court, affirmed per curiam by the state appellate court, denied relief following the evidentiary hearing. The Court explained that counsel did not act deficiently because: (1) counsel's strategy that identity was not an issue was reasonable, and (2) "the trial court's ruling limiting testimony about the tape to identification prohibited counsel from asking questions into the contents of the tape." (Dkt. 15 Ex. 11 at 73–74).

Whether or not the type of impeachment now sought by Mr. Murray was prohibited by the trial court's evidentiary ruling is a matter of state law, and the Court is bound by the state court's conclusion on that issue. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998) ("In habeas corpus proceedings, federal courts generally do not review a state court's admission of evidence."). *See also Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superseded by statute on other grounds)) ("[A]lthough 'the issue of ineffective assistance — even when based on the failure of counsel to raise a state law claim — is one of constitutional dimension,' [the Court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law."). Therefore, because the state court determined the impeachment now sought by Mr. Murray was prohibited, it reasonably concluded trial counsel did not err by failing to pursue such impeachment.

Moreover, even if counsel erred under state law by not attempting to impeach the witnesses' identifications, the Court does not find prejudice as a result of counsel's failure to do

11

so. As explained, identity was not an issue in the case and counsel's defense strategy was reasonable in that regard. *See Strickland*, 466 U.S. at 694.

Accordingly, the state court's decision was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. Ground four does not entitle Mr. Murray to relief.

D. Ground Five

In ground five, Mr. Murray claims counsel erred by "fail[ing] to impeach [S]tate witness Calvin Bryant[, the victim,] by attacking his credibility with his prior inconsistent statements." (Dkt. 1 at 16). He claims that, had counsel impeached Mr. Byrant, there is a reasonable probability that the outcome of the trial would have been different. *Id.*

Mr. Murray does not list in his petition the prior inconsistent statements that he now challenges. This, alone, is sufficient to deny him relief on this claim. *See e.g., Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes to Rule 4 of the *Rules Governing Section 2254 Cases in the United States District Courts*) (with regard to a habeas petition, " '(N)otice' pleading is not sufficient, for the petition is expected to state facts that point to a 'real possibility of constitutional error' "). *See also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that vague, conclusory, or speculative allegations cannot support a claim of ineffective assistance of counsel). However, even considering the challenged statements detailed in issue five in his Rule 3.850 motion for post-conviction relief, his claim is without merit.

In his Rule 3.850 motion for post-conviction relief, Mr. Murray challenged his counsel's failure to impeach on the following statements:

> 1. At trial, Bryant testifies that as he came out of the gyros, he had his drink in his right hand, but during deposition[3] he states that his drink was in his left hand. See TT. p. 125 ln. 22–23 and TT. p. 152 ln. 18–21 and Bryant's deposition p. 10

---

[3] The deposition transcript does not appear to be part of the record before this Court.

ln. 25–p. 11 ln. 1–4.

2. At trial, Bryant testified that he threw his drink down and started running, but during deposition he says he dropped his drink and started running. See TT. p. 137 ln. 3–5 and Bryant's deposition p. 17 ln. 17–20.

3. At trial, Bryant testified that after he pointed out the vehicle at the Shell Station he witnessed the passenger look in the officer's direction and then his direction. During his deposition he guesses that the "suspects seen me" point them out to the officers. See TT. p. 143 ln. 7–10; TT. p. 164 ln. 5–9 and Bryant's deposition p. 21 ln. 7–12.

4. At trial, Bryant testified when he was brought to the location where the Defendant and his co-defendant were being held, he was able to identify the driver and passenger as the people who participated in the robbery. During his deposition he states that the officers "just wanted me to identify them by driver or passenger[."] See TT. p. 144 ln 18–23 and Bryant's deposition p. 22 ln. 23-25.

5. At trial, Bryant testified that he does not go to the meat market or Gyro's on a regular basis, but during his deposition he said "I be there a lot[."] See TT. [p.] 145 ln. 2–6 and Bryant's deposition p. 24 ln. 11–13.

6. At trial, Bryant testified that there were no people around at the time the robbery is alleged to have occurred. During his deposition, he states that there was a "steady flow coming out of Gyro's non-stop" at the time the robbery is alleged to have occurred. See TT. p. 150 ln 3–6 and Bryant's deposition p. 7 ln. 11–15.

7. At trial, Bryant testified that his necklace was 50 inches long, but during his deposition he says it was around 35 inches. See TT. p. 155 ln. 15 and Bryant's deposition p. 14 ln. 9–11.

8. At trial, Bryant testified that the person who robbed him was to the side of him, but during deposition he states that the person who robbed him was behind him. See TT. p. 156 ln. 10–13 and Bryant's deposition p. 12 ln. 17–20.

9. At trial, Bryant testified that he could feel the gun against his head when the robber removed his earring. During his deposition he states that he did not feel the barrel of the gun but that the gun was right next to his ear. See TT. p. 157 [ln.] 11–17 and Bryant's deposition p. 28 ln. 1–5. (Bryant also reiterates that he felt the gun during the State's re-direct. See TT. p. 165 ln. 12 – TT. p. 166 ln. 15.)

10. At trial, Bryant testified that when he was in the turning lane he saw the driver of the vehicle he was following get out of the vehicle. During his deposition, Bryant states that when he got into the turning lane he saw "them pumping gas and while at the gas station I seen the guy coming out of the gas station at that time[."] See TT. p. 139 ln. 14– TT. p. 141 ln. 1; TT. p. 163 ln 23–24 and

13

Bryant's deposition p. 19 ln. 23–p. 20 ln. 9.

(Dkt. 15 Ex. 7 at 14–15).

The state post-conviction court, affirmed per curiam by the state appellate court, denied relief following the evidentiary hearing, explaining:

> Specifically, [Defendant] argues that the victim's testimony was the only direct evidence linking him to the crime and that[,] as a result, attacking his credibility was important. He maintains that, had counsel impeached the victim with the ten inconsistent statements, there is a reasonable probability that the outcome of the proceedings would have been different. Defendant alleges examples of such statements that are different from deposition to trial which counsel should have impeached Bryant on include: holding a drink in his right hand versus left hand, does not go to the meat market on a regular basis versus "I be there a lot," robber was to the side of him versus robber was behind him, and necklace was fifty inches long versus necklace was thirty-five inches long.
>
> At the evidentiary hearing, counsel stated he reviewed the statements Defendant alleged in his Motion that witness Bryant testified to at trial different[ly] from his deposition, and when asked why counsel did not impeach Bryant on those statements, counsel testified:
>
>> MR. MCKEEVER: Again, the issue was not misidentification. I don't — I don't impeach [a] witness on every minor point out of a deposition. I do major points in a deposition. But again, this case was that Mr. Bryant was an individual that was irritated based upon the interaction that they had earlier there. It was not an issue of identification[,] so I would not have hammered him on issues of misidentification.
>>
>> STATE: Okay. And is it your trial strategy to nit-pick or ask about semantics as far as prior statements? Like, for example, he wanted you to cross-examine him that — at the trial; he said he threw a drink but at the deposition he said he dropped the drink; would you have done something like that?
>>
>> MR. MCKEEVER: No.
>
> (*See* Evid. Hrg. Transcr., p. 41).
>
> Further, the Court notes counsel did impeach Bryant on a statement made in his deposition concerning whether Defendant told Bryant he could get his phone. (*See* Tr. Transcr., pp. 159–60). Specifically, at trial, Bryant testified when he asked Defendant if he could get his phone . . . "He said — no, he didn't say yeah."

14

> However, in Bryant's deposition in response to "[s]o when you asked if you could get your phone, what happens?" Bryant testified "he just said yes." (*See* Tr. Transcr., pp. 159–60).
>
> The testimony used to impeach a witness must be relevant and material. *Johnson v. State*, 178 So. 2d 724, 729 (Fla. 2d DCA 1965). The Court finds the listed inconsistencies Defendant alleges counsel should have impeached Bryant with are minor inconsistencies and not material. Additionally, the Court finds that defense counsel's decision not to impeach witness on every single minor point and to impeach only on major points is a reasonable strategic decision, which the Court will not second guess. *See Johnson*, 769 So. 2d at 1001. For these reasons, the Court finds counsel did not act deficiently.

(Dkt. 15 Ex. 11 at 74–75).

Upon review, the state court's decision is supported by the record and was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. "The decision as to whether to cross-examine a witness is 'a tactical one well within the discretion of a defense attorney.'" *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) (quoting *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985)). "Absent a showing of 'a single specific instance where cross-examination arguably could have affected the outcome of either the guilt or sentencing phase of the trial,' the petitioner is unable to show prejudice necessary to satisfy the second prong of *Strickland*." *Id.* (quoting *Messer*, 760 F.2d at 1090).

The Eleventh Circuit has found counsel was ineffective "where counsel failed to impeach the key prosecution witness with prior inconsistent testimony where the earlier testimony was much more favorable to the defendant." *Id.* at 1219–20 (citing *Nixon v. Newsome*, 888 F.2d 112, 115-16 (11th Cir.1989); *Smith v. Wainwright*, 799 F.2d 1442, 1443-44 (11th Cir.1986) (per curiam)). However, a petitioner cannot show ineffective assistance "merely because 'other testimony might have been elicited from those who testified.'" *Id.* at 1220 (quoting *Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995)).

Here, Mr. Murray merely complains that there was other inconsistent testimony that might

15

have been elicited from the victim at trial. However, none of the earlier deposition testimony, as described by Mr. Murray, was any more favorable to his defense. As the state court found, the prior inconsistent statements were not material, and the Court discerns no reasonable probability that impeachment with the prior inconsistent statements would have resulted in Mr. Murray's acquittal. He, therefore, has not demonstrated the prejudice required by *Strickland*. *See* 466 U.S. at 694. Ground five is denied.

E. Ground Six

In ground six, Mr. Murray claims counsel "interfere[ed] with [his] right to testify by misadvising him as to the state's ability to question [him regarding] the nature of his prior offense." (Dkt. 1 at 18). He argues that, had he been advised correctly, he would have chosen to testify and his testimony would have led to his acquittal. (*Id.*).

Although he raised this claim in his motion for post-conviction relief (Dkt. 15 Ex. 7 at 33–35), the issue is not exhausted because he failed to raise it on appeal of the denial of his Rule 3.850 motion. (Dkt. 15 Ex. 14). *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -- (A) the applicant has exhausted the remedies available in the courts of the State[.]"). As he does not assert cause and prejudice or a fundamental miscarriage of justice to overcome the default, *see Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001), the claim is procedurally barred from habeas review and is denied.

F. Ground Seven

In ground seven, Mr. Murray states that his "conviction and sentence was imposed in violation of his right to due process under the 6th and 14th amendments of the U.S. Constitution and the Florida Constitution." (Dkt. 1 at 20). However, under supporting facts, he merely states

"To be amended." (*Id.*). Accordingly, he has failed to assert a claim for relief, and any claim he was attempting to assert is denied. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that vague, conclusory, or speculative allegations cannot support a claim of ineffective assistance of counsel).

G. <u>Ground Eight</u>

Finally, in ground eight, Mr. Murray claims his trial counsel erred by failing to bring to the trial court's attention an exception to the mandatory PRR sentencing scheme. Citing Section 775.082(9)(d)(1), Fla. Stat. (2007), Mr. Murray claims that, because the victim did not want him to receive a mandatory life sentence, there is a reasonable probability that the trial court would have sentenced him to a term less than life in prison. (Dkt. 1 at 21–22).

Mr. Murray raised this claim as issue eight in his Rule. 3.850 motion for post-conviction relief. (Dkt. 15 Ex. 7 at 38–39). Following an evidentiary hearing, the post-conviction court, affirmed per curiam by the state appellate court, denied relief:

> At the evidentiary hearing, counsel testified he is familiar with the PRR statute and that exception is not a statutory exception. (*See* Evid. Hrg, Transcr., p. 46). Counsel testified[,] as to the PRR status of Defendant, [that] "[t]he state attorney has to agree to waive the designation" and that the state did not agree to waive PRR for Defendant in this case. (*See* Evid. Hrg. Transcr., p. 46).
>
> A[s] review of the transcript indicates, Defendant's counsel stated to the Court at sentencing that his client "has been noticed as a prison releasee reoffender. We understand that. The Court has no discretion on the type of charge... we've discussed that in great detail and he understands that." (*See* Tr. Transcr. p. 305). Further, the trial court placed Defendant under oath and confirmed that he qualified as a PRR. (*See* Tr. Transcr. p. 307).
>
> The Court notes Florida [S]tatute § 775.082 (9) states:
>
> 1. It is the intent of the Legislature that offenders previously released from prison who meet the criteria in paragraph (a) be punished to the fullest extent of the law and as provided in this subsection, unless the state attorney determines that extenuating circumstances exist which preclude the just prosecution of the offender, including whether the victim recommends that

> the offender not be sentenced as provided in this subsection.
>
> 2. For every case in which the offender meets the criteria in paragraph (a) and does not receive the mandatory minimum sentence, the state attorney must explain the sentencing deviation in writing and place such explanation in the case file maintained by the state attorney.
>
> Fla. Stat. § 775.082 (9) (d) (2007). The statute's reference to "victim recommends" is not a "statutory exception" to PRR sentencing as Defendant alleges; . . . it is an example of an "extenuating circumstance" in which the state attorney may choose to not designate a defendant as a PRR. The statute requires that the State first determine if such a circumstance exists, then the State can choose not to prosecute a defendant as a PRR, and the State must explain such a deviation in writing. In Defendant's case, the State did not make a determination to deviate from the statute and not classify Defendant as a PRR. The Court finds counsel did not act deficiently because the decision to not designate Defendant as a PRR is left to the State, not defense counsel. As such, no relief is warranted on ground eight.

(Dkt. 15 Ex. 11 at 80–81).

Although the question of ineffective assistance is one of federal law, the issue of whether Section 775.082(9)(d), Florida Statutes, operates as Mr. Murray claims it does is an issue of state law. The Court is bound by the state court's determination on that issue. *See Pinkney*, 876 F.3d at 1295. Because the state court decided that the State, not defense counsel, must determine whether an extenuating circumstance exists pursuant to Section 775.082(9)(d), Florida Statutes, it reasonably determined that defense counsel did not err by failing to bring the alleged exception to the court's attention.

The state court's decision is, therefore, not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. Ground eight is denied.

Any of Mr. Murray's allegations not specifically addressed herein are without merit.

It is therefore **ORDERED AND ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**. The Clerk shall enter judgment against Mr. Murray and close this case.

2. A certificate of appealability (COA) is **DENIED** in this case because Mr. Murray cannot make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). And because Mr. Murray is not entitled to a COA, he is not entitled to proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on January 24th, 2019.

WILLIAM F. JUNG
United States District Judge

Copies to: Petitioner *pro se*; Counsel of Record